Sheila R. Schwager, ISB No. 5059
Brent R. Wilson, ISB No. 8936
HAWLEY TROXELL ENNIS & HAWLEY LLP
877 Main Street, Suite 1000
P.O. Box 1617
Boise, ID 83701-1617
Telephone: 208.344.6000
Facsimile: 208.954.5261
Email: sschwager@hawleytroxell.com
        bwilson@hawleytroxell.com

Attorneys PHH Mortgage Corporation, successor by
merger to Ocwen Loan Servicing, LLC servicing
agent for Deutsche Bank National Trust Company,
as Trustee for Morgan Stanley ABS Capital I Inc.
Trust 2003-NC5, Mortgage Pass-Through
Certificates, Series 2003-NC5

UNITED STATES BANKRUPTCY COURT

DISTRICT OF IDAHO

| | |
|---|---|
| In re:<br><br>JERRY LEE LOSEE and JOCAROL LOSEE,<br><br>Debtors. | Case No. 19-40540-JMM<br><br>Chapter 13 |

## OBJECTION AND RESPONSE TO DEBTORS' MOTION TO RECONSIDER STAY RELIEF ORDER

Creditor PHH Mortgage Corporation, successor by merger to Ocwen Loan Servicing,

LLC ("**Servicer**") servicing agent for Deutsche Bank National Trust Company, as Trustee for

Morgan Stanley ABS Capital I Inc. Trust 2003-NC5, Mortgage Pass-Through Certificates, Series

2003-NC5 ("**Beneficiary**"), by and through its attorneys of record, HAWLEY TROXELL ENNIS &

OBJECTION AND RESPONSE TO DEBTORS' MOTION TO RECONSIDER
STAY RELIEF ORDER- 1

41970.0060.12148278.1

HAWLEY LLP, hereby objects and files its response, as ordered by this Court, to the Motion to Reconsider (Dkt. No. 35) (the "**Reconsideration Motion**") filed on July 31, 2019, by Debtors Jerry Lee Losee and JoCarol Losee ("**Debtors**").  This objection and response is filed pursuant to the Order on Debtors' Motion to Reconsider (Dkt. No. 36) entered on August 8, 2019 (the "**Scheduling Order**").

## I.
## BACKGROUND AND PROCEDURAL HISTORY

**A.**    **Note and Deed of Trust Encumbering the Property.**

1.    On or around February 6, 2003, the Debtors executed a promissory note in favor of New Century Mortgage Corporation ("**New Century**") for the principal sum of $96,000.00, with interest accruing at a variable rate beginning at 8.75% per annum ("**Note**").  The Debtors agreed to pay the Note in regular monthly payments of $755.24, commencing April 1, 2003, and continuing each month on the first day of the month until March 1, 2033, when all principal and accrued interest would become immediately due and payable.

2.    The Note further provided that if there was any payment default under the Note, the entire principal sum and accrued interest became due and payable.  The Note was attached to Servicer's Motion for Relief from the Automatic Stay (the "**Stay Lift Motion**") as Exhibit A. *See* Dkt. No. 13.

3.    To secure the obligations under the Noted owed by Debtors to New Century, Debtors granted a Deed of Trust in favor of New Century, recorded on February 14, 2003, as Instrument No. 20303818, records of Bannock County, Idaho ("**Deed of Trust**"), in regard to real property commonly known as 9253 Frandsen Road, Lava Hot Springs, Idaho 83246 (the

OBJECTION AND RESPONSE TO DEBTORS' MOTION TO RECONSIDER
STAY RELIEF ORDER- 2

41970.0060.12148278.1

"**Property**").  The Deed of Trust was attached to the Stay Lift Motion as Exhibit B.  *See* Dkt. No. 13.

4.      In April 2003, as amended in November 2013, the Note and Deed of Trust were transferred from New Century to Beneficiary by an Assignment of Deed of Trust (the "**Assignment**").  The Assignment was attached to the Stay Lift Motion as Exhibit C.  *See* Dkt. No. 13.

**B.      Default Under the Note, Extended Foreclosure Proceedings, and Multiple Bankruptcies Affecting the Property.**

5.      The Debtors defaulted in making payments as required under the Note in <u>2009</u>.

6.      Foreclosure proceedings were commenced in 2009, due to Debtors' default under the Note.  However, a foreclosure sale has not yet occurred due to numerous delays caused by Debtors, including multiple bankruptcies for the sole purpose of delaying the foreclosure.

7.      In addition to the bankruptcy filings, Debtors have filed other state court actions to delay the foreclosure as well.

8.      On July 14, 2010, Debtors filed a *pro se* Chapter 13.  *See* Bankr. Case No. 10-41246-JDP.  This case affected the Property.  *See id.* at Dkt. No. 1 (listing the Property in Schedule A).  This case did not result in a confirmed Chapter 13 plan, and the Bankruptcy was voluntarily dismissed by Debtors on September 8, 2010.  *See id.* at Dkt. No. 32 (Order Dismissing Case).

9.      Thereafter, on July 6, 2011—one day before another foreclosure sale was scheduled to occur on the Property—Debtors filed a complaint in in the District Court of the Sixth Judicial District of the State of Idaho, in and for the County of Bannock requesting a temporary restraining order preventing the sale.  The restraining order was granted to maintain

OBJECTION AND RESPONSE TO DEBTORS' MOTION TO RECONSIDER
STAY RELIEF ORDER- 3

the status quo and provide the court sufficient time to review the claims asserted by the Debtors. Once the court undertook that review, the case was dismissed in December 2011 due to the lack of merit of any of the claims, and the Beneficiary was permitted to proceed with the foreclosure.

10.    The very next month, on January 12, 2012, Debtors filed another *pro se* Chapter 13 Bankruptcy. *See* Bankr. Case No. 12-40033-JDP. This case affected the Property and the ability to proceed with another foreclosure sale; however, no schedules or a proposed Chapter 13 plan were filed. *See id.* On the date that Debtors were to file their schedules and Chapter 13 plan, January 26, 2012, Debtors instead filed another voluntary motion to dismiss the case, which was granted by the Court. *See id.* at Dkt. Nos. 15, 17.

11.    After this second Chapter 13 case was dismissed, a foreclosure sale was set for December 28, 2012.

12.    On December 26, 2012—two days before the trustee's sale was scheduled for the Property—Debtors filed a third *pro se* Chapter 13 case. *See* Bankr. Case No. 12-41726-JDP. This case affected the Property by staying the foreclosure sale, however, again no schedules or proposed Chapter 13 plan were filed. *See id.* Indeed, on the date that Debtors were to file their schedules and chapter 13 plan, January 9, 2013, Debtors instead filed another voluntary motion to dismiss the case, which was granted by the Court. *See id.* at Dkt. Nos. 15, 17.

13.    In 2014, the Servicer was further delayed in the foreclosure process on the Property when Debtors requested a loss mitigation review. The request was reviewed but the only available option was a short sale. The Debtors refused this option.

14.    Then, in 2015, Debtors filed a complaint in the District Court of the Sixth Judicial District of the State of Idaho, in and for the County of Bannock (Case No. CV-2015-2863-OC),

alleging that the interest in the Deed of Trust was improperly transferred to Beneficiary. This action again resulted in a postponement of the foreclosure sale of the Property. The Servicer obtained summary judgment in that case on November 22, 2017, and the action was dismissed with prejudice.

15.    After summary judgment was granted to the Servicer, the Debtors filed a Notice of Appeal with the Idaho Supreme Court and two motions to stay the judgment (one motion to the District Court and one motion with the Idaho Supreme Court). Both stay motions were denied, and the appeal has been fully briefed with the Idaho Supreme Court and is awaiting oral argument in case number 45721 ("**ISC Case**").

16.    Based upon the lack of a stay on appeal in above case, the Servicer proceeded with its foreclosure efforts on the Property.

17.    Debtors thereafter filed yet another action in the District Court of the Sixth Judicial District of the State of Idaho, in and for the County of Bannock on (Case No. CV-03-19-01566) on April 24, 2019 ("**Second State Action**"), which is similar to the claims made in the ISC Case. In the Second State Action, on May 30, 2019, Debtors filed a Motion to Stay the Foreclosure Sale scheduled for June 5, 2019.

18.    On the morning of June 5, 2019, the Court in the Second State Action denied Debtors' Motion to Stay the Foreclosure Sale.

19.    Thus, this Chapter 13 Bankruptcy—the *fourth* bankruptcy case affecting the Property and *fifth* bankruptcy case filed by Debtors—was then filed shortly before the sale. Dkt. No. 1. Debtors again, as they did with the last two bankruptcy cases filed in 2012, did not file

OBJECTION AND RESPONSE TO DEBTORS' MOTION TO RECONSIDER
STAY RELIEF ORDER- 5

41970.0060.12148278.1

any schedules or a proposed Chapter 13 plan in this case. *See* Dkt. No. 1 (setting the deadline for those documents on June 19, 2019).

20.     This chapter 13 case once again delayed the foreclosure sale on the Property that was to occur on June 5, 2019.

21.     On June 7, 2019—two days after Debtors filed this bankruptcy case—the Servicer filed the Stay Lift Motion, seeking *in rem* relief under 11 U.S.C. § 362(d)(4). The Stay Lift Motion was duly served on the Debtors. *See* Dkt. No. 13.

22.     Significantly the Debtors do not (and could not) dispute any of the above referenced facts. Indeed, this Court noted in its Scheduling Order that, "[t]he Debtors in the [Reconsideration] Motion do not challenge the entry of the Stay Lift Order for the cause stated under 11 U.S.C. § 362(d)(4), *i.e.,* they neither dispute that there were multiple bankruptcy cases affecting the Subject Property that were dismissed, nor any of the other causes stated in the Stay Lift Motion."

**C.      Servicer as Authorized Servicer of Beneficiary's Interest in the Deed of Trust and Servicer's Merger.**

23.     Ocwen Loan Servicing, LLC was granted the servicing authority by Beneficiary pursuant to the Limited Power of Attorney executed by Beneficiary on December 7, 2012. A true and correct copy of the Limited Power of Attorney is attached hereto and incorporated by reference herein as **Exhibit A**. The servicing authority granted in the Limited Power of Attorney includes, but is not limited to, the full enforcement and preservation of Beneficiary's interest in loan documents, including foreclosing and the filing, prosecution, and defense of claims on behalf of Beneficiary.

OBJECTION AND RESPONSE TO DEBTORS' MOTION TO RECONSIDER
STAY RELIEF ORDER- 6

24.    As set forth in the Certificate of Merger, PHH Mortgage Corporation merged with Ocwen Loan Servicing, LLC on June 1, 2019. A true and correct copy of the Certificate of Merger from the Delaware Secretary of State is attached hereto and incorporated by reference herein as **Exhibit B**. *See also* SEC Filings, Shareholder Relations, Ocwen, http://shareholders.ocwen.com/financial-information/sec-filings (listing SEC documents of merger as of June 1, 2019).

25.    The Servicer decided to use the name of PHH rather than Ocwen.

26.    The undersigned counsel became aware of Servicer using the name of PHH around the same time the Stay Lift Order (defined below) was ripe for entry by the Court. Accordingly, when the Stay Lift Order was submitted, the fact of the merger was referenced therein.

**D.    The Stay Lift Motion, Debtors' Motion to Dismiss, and Servicer's Objection to the Motion to Dismiss.**

27.    As noted by this Court in the Scheduling Order, the Stay Lift Motion served on June 7, 2019, provided the required notice—as per the Local Rule 4001.2—that any objecting party must file a written objection to the Stay Lift Motion if the objecting party opposes the relief requested in the Stay Lift Motion. *See* Dkt. No. 13 at 11-12. The deadline for objection to the Stay Lift Motion was June 27, 2019.

28.    On June 18, 2019—notably within the objection period of the Stay Lift Motion— the Debtors filed their Voluntary Motion to Dismiss Case (the "**Motion to Dismiss**"), but they did not file a response to the Stay Lift Motion. *See* Dkt. No. 22. The Motion to Dismiss was filed one day before the due date for Debtors' schedules, other required documents, and chapter 13 plan, as was the practice of Debtors in prior bankruptcy cases.

OBJECTION AND RESPONSE TO DEBTORS' MOTION TO RECONSIDER
STAY RELIEF ORDER- 7

29.    Also on June 18, 2019—again within the objection period of the Stay Lift Motion—the Debtors apparently had sufficient time to file a multi-page Plaintiffs' Motion for Partial Summary Judgment in the Second State Action. The Debtors attached said state court filing to the Reconsideration Motion. *See* Dkt. No. 35-1 at 21.

30.    The Servicer then filed its Limited Objection to Debtors' Voluntary Motion to Dismiss on June 20, 2019 (the "**Dismissal Objection**"). *See* Dkt. No. 23. Notably, the Dismissal Objection, which was duly served upon the Debtors, expressly stated that the Servicer objected to the dismissal of the bankruptcy case pending resolution of the Stay Lift Motion based upon the Servicer's request to obtain a Section 362(d)(4) Order. *Id.*

31.    The Dismissal Objection was set for hearing on July 16, 2019, by the Servicer. *See* Dkt. No. 24.

32.    After the objection period for the Stay Lift Motion expired, and because neither the Debtors nor any other party in interest objected to the relief sought in the Stay Lift Motion, the Servicer filed its Statement of No Objection as required by the Local Rules. *See* Dkt. No. 26. Further, the Servicer submitted its proposed Order Granting Motion for Relief from the Automatic Stay to the Court.

33.    The Court entered the Order Granting Motion for Relief from the Automatic Stay on July 1, 2019 (the "**Stay Lift Order**"). *See* Dkt. No. 27.

34.    The Stay Lift Order contains a footnote that indicates the name change of the Servicer based upon the June 1, 2019 merger, with a link to the S.E.C. documents disclosing the merger.

OBJECTION AND RESPONSE TO DEBTORS' MOTION TO RECONSIDER
STAY RELIEF ORDER- 8

35.     On July 2, 2019, the Servicer filed an amended notice of hearing on the Dismissal

Objection to be held on August 12, 2019, on the Court's video calendar.  *See* Dkt. No. 28.

36.     The Debtors did not respond to the Dismissal Objection in any way.

37.     Based upon the appeal period running on the Stay Lift Order, on July 23, 2019,

the Servicer withdrew its Dismissal Objection and caused the hearing on the Dismissal Objection

to be vacated.  *See* Dkt. No. 31.

38.     The Court thereafter entered an Order Granting Motion to Dismiss Case, as the

Debtors had requested.  *See* Dkt. No. 32.

**E.     The Reconsideration Motion and this Court's Scheduling Order.**

39.     On July 31, 2019, the Debtors filed the Reconsideration Motion asking the Court

to "reconsider" the Stay Lift Order (Dkt. No. 27).

40.     The grounds Debtors state for such relief are:  (1) that Servicer "did not have the

right to file for a Motion for Relief from the Automatic Stay because they gave up their rights to

service the loan on June 1, 2019[,] when they transferred their rights to PHH Mortgage Services .

. . ."; and (2) Debtors did not respond to the Stay Motion because they were "out of reach for an

extended period."  Both grounds fail.

## II.
## PRO-SE STANDARD

Federal courts make "reasonable allowances for *pro se* litigants and construe their

pleadings and papers liberally."  *Saito Bros., Inc. v. Karass (In re Saito Bros. Inc.)*, 560 B.R.

540, 545 (Bankr. D. Idaho 2016); *In re Jacksen*, 105 B.R. 542, 543 (9th Cir. BAP 1989) (citing

*McCabe v. Arave*, 827 F.2d 634, 640, n.6 (9th Cir. 1987)).  Nevertheless, "it is still the *pro se*

litigant's burden to establish a proper legal basis for any relief sought or defense raised, and to

OBJECTION AND RESPONSE TO DEBTORS' MOTION TO RECONSIDER
STAY RELIEF ORDER- 9

follow the requirements of the Bankruptcy Code, Bankruptcy Rules, and Local Bankruptcy Rules." *In re Saito Bros. Inc.*, 560 B.R. at 545 (citing *Arnold v. Gill (In re Arnold),* 252 B.R. 778, 781, n.2 (9th Cir. BAP 2000)). Further, the "Court must be careful not to act as the *pro se* litigant's advocate." *In re Borup*, 2014 WL 174779, at *2 (Bankr. D. Idaho Jan. 10, 2014) (citing *Jones v. Dole Food Co., Inc.,* 827 F.Supp.2d 532, 536 (W.D.N.C. 2011)).

### III.
### ARGUMENT

Neither of the stated grounds to grant the relief as requested in the Reconsideration Motion satisfy the requirements of Federal Rule of Bankruptcy Procedure 9023, incorporating Federal Rule of Civil Procedure 59, or Federal Rule of Bankruptcy Procedure 9024, incorporating Federal Rule of Civil Procedure 60.[1]

Motions to reconsider will be analyzed under either Rule 9023 (Civil Rule 59) or Rule 9024 (Civil Rule 60) depending on the timing of the motion seeking reconsideration. *Wood v. Loader (In re Loader)*, 424 B.R. 464, 466 (Bankr. D. Idaho 2009); *See also In re Ricks*, 2015 WL 6125559, at *1 (Bankr. D. Idaho Oct. 16, 2015) (citing *In re Loader* on this legal principle).

**A.**   **Motion to Reconsider under Rule 9023 and Civil Rule 59(e).**

Because a motion to reconsider does not exist under the Rules or Civil Rules, when such a motion is made it is treated as a motion under Civil Rule 59(e) if it is made within fourteen days of the order or judgment. *Hanson v. Finn (In re Curry and Sorenson)*, 57 B.R. 824, 826-27 (9th Cir. BAP 1986).

---

1    Hereinafter, the particular Federal Rules of Civil Procedure shall be referred to as "Civil Rule" and the particular Federal Rules of Bankruptcy Procedure shall be referred to as "Rule".

A Rule 9023 and Civil Rule 59(e) motion must be filed 14 days of the subject order or judgment. *See* Rule 9023 ("A motion for a new trial or to alter or amend a judgment shall be filed, and a court may on its own order a new trial, no later than 14 days after entry of the judgment."); *see also In re Ricks*, 2015 WL 6125559, at *1, n.5 (noting Rule 9023 requires the motion "must be filed no later than 14 days after the entry of the subject order or judgment."). This deadline may not be extended by the Court. *See* Rule 9006(b)(2) (stating "enlargement" of time to take action under Rule 9023 is not allowed).

In this case, the Reconsideration Motion is not timely under Civil Rule 59(e). The Reconsideration Motion seeks the Court's "reconsideration" of the Stay Lift Order, which was entered on July 1, 2019. *See* Dkt. No. 27. The Reconsideration Motion is dated July 31, 2019—thirty days after the Stay Order. *See* Dkt. No. 35. Because the Reconsideration Motion was not timely under Rule 59(e) and Civil Rule 9023, the Motion must be one under Rule 60 and Civil Rule 9024. *See United States v. Comprehensive Drug Testing, Inc.*, 513 F.3d 1085, 1098 (9th Cir. 2008) ("[A] motion for reconsideration is treated as a motion to alter or amend judgment under [Civil] Rule 59(e) if it is filed within [fourteen] days of entry of judgment . . . . Otherwise, it is treated as a [Civil] Rule 60(b) motion for relief from a judgment or order.") (quotation marks and citations omitted).

**B.** **Motion to Reconsider Under Rule 9024 and Civil Rule 60(b).**

To prevail on a Rule 60(b) motion, incorporated to this proceeding by Rule 9024, a moving party bears the burden of proving a justification for relief from the targeted order or judgment of the court. *Cassidy v. Tenorio*, 856 F.2d 1412, 1415 (9th Cir. 1988). A trial court

has broad discretion in deciding a Rule 60(b) motion. *In re Shingleton*, 2007 WL 2743503, at *2 (Bankr. D. Idaho Sept. 18, 2017).

There are six bases to obtain relief under Rule 60(b). The Reconsideration Motion does not cite or rely upon any of these grounds. The only applicable bases the Debtors could attempt to argue under is Civil Rule 60(b)(1), mistake, surprise, or excusable neglect; Civil Rule 60(b)(2), newly discovered evidence; and/or Civil Rule 60(b)(6), other circumstances justifying relief. However, as detailed below, the Reconsideration Motion does not meet the requirements of these provisions.

As to Civil Rule 60(b)(1) a court may relieve a party from an order based upon "mistake, inadvertence, surprise, or excusable neglect." In that regard, the Debtors vaguely and conclusory claim that they were "out of reach for an extended period" and they claim that the Ocwen Servicing LLC gave up its rights to service the loan on June 1, 2019, due to the merger. Yet, the Debtors do not argue in the Reconsideration Motion that they were mistaken, inadvertent, or surprised by the relief expressly requested in the Stay Lift Motion, duly served on the Debtors June 7, 2019, and again referenced in the Dismissal Objection served on June 20, 2019. In that Stay Lift Motion the grounds for the § 362(d)(4) Stay Lift Motion were plainly set forth in specific detail. Yet, not only did the Debtors not dispute those facts in the objection period, they also failed to address them when served with the Dismissal Objection, and failed to dispute them in the Reconsideration Motion at issue.

"In deciding whether a party has demonstrated 'excusable neglect' to support relief from an order . . . the Court employs the standard established in *Pioneer Inv. Servs. Co. v. Brunswick Assoc. Ltd. P'ships*, 507 U.S. 380 (1993)." *In re Bott*, 2003 WL 25273846, at *4 (Bankr. D.

Idaho May 30, 2003). "The circumstances this Court is directed to consider are 'the danger of prejudice to the debtor, the length of delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Id.* (quoting *Pioneer*, 507 U.S. at 395).

The *Pioneer* considerations preclude the relief requested by the Debtors. First, there is no danger of prejudice to Debtors. The Debtors do not and cannot dispute that they have filed multiple bankruptcies affecting the Property in an effort to hinder, delay, or defraud the Servicer's foreclosure on the Property, which first foreclosure attempt began in 2009. This is not an appropriate use of the bankruptcy process or Code, as indicated in 11 U.S.C. § 362(d)(4). Accordingly, the Servicer is entitled to relief as granted in the Stay Lift Order.

Moreover, the Debtors are incorrect that the Servicer did not have standing to obtain the Stay Lift Order, and therefore are not prejudiced on this ground. The applicable State law conclusively provides that upon merger of entities all debts owed to, rights, and other property of the combined entities is vested in the merged company or companies automatically. "All real property and personal property, tangible and intangible, of every kind and description belonging to each of the corporations so merged or consolidated shall be vested in the surviving or new corporation *without further act or deed*; and title to real estate, or any interest therein, vested in any of such corporations shall not revert or be in any way impaired by reason of such merger or consolidation." N.J. STAT. ANN. 14A:10-6(d) (emphasis added); *see also* 8 DEL. CODE § 259(a) ("When any merger or consolidation shall have become effective under this chapter, for all purposes of the laws of this State the separate existence of all the constituent corporations . . . shall cease and the constituent corporations shall become . . . merged into one of such

OBJECTION AND RESPONSE TO DEBTORS' MOTION TO RECONSIDER
STAY RELIEF ORDER- 13

corporations, as the case may be, *possessing all the rights, privileges, powers* and franchises . . .
of each of such corporations so merged or consolidated . . . and all property, real, personal and
mixed, and all debts due to any of said constituent corporations on whatever account . . . shall be
vested in the corporation surviving or resulting from such merger or consolidation . . . .")
(emphasis added).

PHH Mortgage Corporation is a New Jersey corporation as stated in the Certificate of
Merger. *See* Exhibit B. Ocwen Loan Servicing, LLC is a Delaware limited liability company.
Based upon the State law referenced above, any and all rights, privileges, and powers of these
entities are now those rights, privileges, and powers of the merged companies by operation of
law. Therefore, the rights of the Servicer under the Note as secured by the Deed of Trust are
vested in the merged companies and the Servicer may continue to proceed with those rights,
privileges, and powers, despite the merger of the companies, as a matter of law, without any
further act or deed. The Debtors' statement that the merger caused the Servicer to lose any rights
as to the loan and Property have no basis in law or fact.

Further, the length of the delay by the Debtors in moving for reconsideration was thirty
(30) days, but when considering the length of delay of the foreclosure process on the Property by
the Servicer, which is <u>ten years</u>, the length of the delay in repeated judicial proceedings weighs
in favor of denying the Reconsideration Motion.

Finally as to the reason for delay, whether the delay was in the control of Debtors, and
whether Debtors acted in good faith, these factors also clearly weigh in favor of denying the
Reconsideration Motion. With no explanation and contrary to the filings with this Court, the
Debtors assert that they were "out of reach." Indeed, this assertion is belied by the fact that the

OBJECTION AND RESPONSE TO DEBTORS' MOTION TO RECONSIDER
STAY RELIEF ORDER- 14

Debtors filed with this Court, and well within the objection period of the Stay Lift Motion, the Motion to Dismiss this Bankruptcy Case. *See* Dkt. No. 22. Further, the Debtors filed a lengthy Motion for Partial Summary Judgment in the Second State Action on June 18, 2019, which date is well within the objection period of the Stay Lift Motion. *See* Dkt. No. 35-1 at 21. That is, the Debtors clearly were not "out of reach" to make affirmative and responsive filings in this Bankruptcy Case and the Second State Action. The Debtors' statements in this regard demonstrate that Debtors are not in good faith. Accordingly, the Debtors have failed to carry their burden under Civil Rule 60(b)(1).

Under Civil Rule 60(b)(2), grounds for relief from an order of the court may be found upon "newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b)." To meet the "newly discovered evidence" standard, "the movant must demonstrate 'that the evidence was discovered after the judgment, that the evidence could not be discovered earlier through due diligence, and that the newly discovered evidence is of such a magnitude that had the court known of it earlier, the outcome would likely have been different.'" *In re Thomason*, 2008 WL 2755654, at *2 (Bankr. D. Idaho July 14, 2008) (quoting *Dixon v. Wallowa County*, 336 F.3d 1013, 1022 (9th Cir. 2003)). "The same standard for what constitutes 'newly discovered evidence' applies in [Civil] Rule 60(b)(2) and [Civil] Rule 59(e), although there is some suggestion that because a [Civil] Rule 60(b)(2) motion may be heard at a later time than a Rule 59(e) motion, the quantum of proof should be stronger the longer the gap between the judgment and the motion under [Civil] Rule 60(b)(2)." *In re Walker*, 332 B.R. 820, 828 n.9 (Bankr. D. Nev. 2005) (citations omitted).

OBJECTION AND RESPONSE TO DEBTORS' MOTION TO RECONSIDER
STAY RELIEF ORDER- 15

If the Debtors are contending that the "new evidence" is that of the merger of PHH and Ocwen, their own documents establish that they knew about the servicing of the loan in the name of PHH prior to the Stay Lift Order being entered.  In that regard, the Debtors attach to their Reconsideration Motion a letter from PHH dated June 4, 2019.  *See* Dkt. 35-1, Pp 1-4 of 26. Further, in the Second State Action, they filed a summary judgment motion on June 18, 2019 (during the objection period to the Stay Lift Motion), in which they argued that "Ocwen Loan Servicing LLC transferred their servicing rights to PHH Mortgage." *See* Dkt. 35-1, p. 22 of 26. Thus, the purported evidence was discovered prior to the entry of the Stay Lift Order.

In any event, the outcome of the Stay Lift Order would not be different even if there was newly discovered evidence.  As this Court stated in the Scheduling Order, there is no dispute by Debtors of the multiple bankruptcies filed by them, which filing affected an effort to hinder, delay, and defraud the Servicer from foreclosing upon the Property.  Further, as set forth above, the merger with PHH did not affect the rights, privileges and powers in that regard.  The Debtors have therefore failed to carry their burden under Civil Rule 60(b)(2).

Finally, the catch-all provision of Civil Rule 60(b) is Civil Rule 60(b)(6), which allows for relief from an order for "any other reason that justifies relief."  "The Ninth Circuit has held that [Civil] Rule 60(b)(6) and [Civil] Rule 60(b)(1) are 'mutually exclusive; a motion brought under clause (6) must be for some reason other than the five reasons proceeding it under the rule.'" *In re Bott*, 2003 WL 25273846, at *2 (quoting *Lyon v. Augusta S.P.A.*, 252 F.3d 1078, 1088-89 (9th Cir. 2001)).  Moreover, Civil Rule 60(b)(6) "is only to be applied in rare cases where a party was prevented by 'extraordinary circumstances' from seeking timely prevention or correction of an erroneous judgment." *United States v. Washington*, 98 F.3d 1159, 1163 (9th

OBJECTION AND RESPONSE TO DEBTORS' MOTION TO RECONSIDER
STAY RELIEF ORDER- 16

Cir. 1996). "To qualify for relief under [Civil] Rule 60(b)(6), a moving party must 'show both injury and that circumstances beyond its control prevented timely action to protect its interest. Neglect or lack of diligence is not to be remedied through [Civil] Rule 60(b)(6)." *In re Wilson*, 349 B.R. 831, 836 (Bankr. D. Idaho 2006) (citations omitted).

In this case, the Debtors provide no "extraordinary circumstances" in the Reconsideration Motion to give grounds for a finding under the Civil Rule 60(b)(6) standard and for the reasons set forth above, no such basis exists.

## IV.
## CONCLUSION

Based upon the record in this case and this response, the Servicer respectfully requests that the Debtors' Reconsideration Motion be denied.

DATED THIS 23rd day of August, 2019.

HAWLEY TROXELL ENNIS & HAWLEY LLP

By _____
Brent R. Wilson, ISB No. 8936
Attorneys PHH Mortgage Corporation,
successor by merger to Ocwen Loan Servicing,
LLC servicing agent for Deutsche Bank
National Trust Company, as Trustee for Morgan
Stanley ABS Capital I Inc. Trust 2003-NC5,
Mortgage Pass-Through Certificates, Series
2003-NC5

OBJECTION AND RESPONSE TO DEBTORS' MOTION TO RECONSIDER
STAY RELIEF ORDER- 17

41970.0060.12148278.1

<u>CERTIFICATE OF SERVICE</u>

    I HEREBY CERTIFY that on this 23rd day of August, 2019, I electronically filed the foregoing **OBJECTION AND RESPONSE TO DEBTORS' MOTION TO RECONSIDER STAY RELIEF ORDER** with the Clerk of the Court using the CM/ECF system which sent a Notice of Electronic Filing to the following persons:

Kathleen A. McCallister                kam@kam13trustee.com

US Trustee                             Ustp.region18.bs.ecf@usdoj.gov

    AND, I HEREBY CERTIFY that I have served the foregoing document to the following non-CM/ECF Registered Participants **via U.S. Mail** (list names and addresses):

Jerry Lee Losee
9253 Frandsen Rd
Lava Hot Springs, ID 83246

JoCarol Losee
9253 Frandsen Rd
Lava Hot Springs, ID 83246

PRA Receivables Management, LLC
PO Box 41021
Norfolk, VA 23541

_____
Brent R. Wilson

OBJECTION AND RESPONSE TO DEBTORS' MOTION TO RECONSIDER
STAY RELIEF ORDER- 18

41970.0060.12148278.1

# EXHIBIT A

When Recorded Return to:
Ocwen Loan Servicing, LLC
1661 Worthington Road, Suite 100
West Palm Beach, FL 33409

## LIMITED POWER OF ATTORNEY

2675

KNOW ALL MEN BY THESE PRESENTS, that Deutsche Bank National Trust Company, a national banking association organized and existing under the laws of the United States, and having its usual place of business at 1761 East St. Andrew Place, Santa Ana, California, 92705, as Trustee (the "Trustee") for the Agreements listed on Exhibit A (the "Agreement") by and between Deutsche Bank National Trust Company and Ocwen Loan Servicing, LLC (the "Servicer"), as successor servicer to HomEq Servicing, hereby constitutes and appoints the Servicer, by and through the Servicer's officers, the Trustee's true and lawful Attorney-in-Fact, in the Trustee's name, place and stead and for the Trustee's benefit, in connection with all mortgage loans serviced by the Servicer pursuant to the Agreement solely for the purpose of performing such acts and executing such documents in the name of the Trustee necessary and appropriate to effectuate the following enumerated transactions in respect of any of the mortgages or deeds of trust (the "Mortgages" and the "Deeds of Trust" respectively) and promissory notes secured thereby (the "Mortgage Notes") for which the undersigned is acting as Trustee for various certificateholders (whether the undersigned is named therein as mortgagee or beneficiary or has become mortgagee by virtue of endorsement of the Mortgage Note secured by any such Mortgage or Deed of Trust) and for which Ocwen Loan Servicing, LLC is acting as the Servicer.

This Appointment shall apply only to the following enumerated transactions and nothing herein or in the Agreement shall be construed to the contrary:

1. The modification or re-recording of a Mortgage or Deed of Trust, where said modification or re-recording is solely for the purpose of correcting the Mortgage or Deed of Trust to conform same to the original intent of the parties thereto or to correct title errors discovered after such title insurance was issued; provided that (i) said modification or re-recording, in either instance, does not adversely affect the lien of the Mortgage or Deed of Trust as insured and (ii) otherwise conforms to the provisions of the Agreement.

2. The subordination of the lien of a Mortgage or Deed of Trust to an easement in favor of a public utility company of a government agency or unit with powers of eminent domain; this section shall include, without limitation, the execution of partial satisfactions/releases, partial reconveyances or the execution or requests to trustees to accomplish same.

3. The conveyance of the properties to the mortgage insurer, or the closing of the title to the property to be acquired as real estate owned, or conveyance of title to real estate owned.

4. The completion of loan assumption agreements.

5. The full satisfaction/release of a Mortgage or Deed of Trust or full conveyance upon payment and discharge of all sums secured thereby, including, without limitation, cancellation of the related Mortgage Note.

6. The assignment of any Mortgage or Deed of Trust and the related Mortgage Note, in connection with the repurchase of the mortgage loan secured and evidenced thereby.

7. The full assignment of a Mortgage or Deed of Trust upon payment and discharge of all sums secured thereby in conjunction with the refinancing thereof, including, without limitation, the assignment of the related Mortgage Note.

8. The full enforcement of and preservation of the Trustee's interests in the Mortgage Notes, Mortgages or Deeds of Trust, and in the proceeds thereof, by way of, including but not limited to, foreclosure, the taking of a deed in lieu of foreclosure, or the completion of judicial or non-judicial foreclosure or the termination, cancellation or rescission of any such foreclosure, the initiation, prosecution and completion of eviction actions or proceedings with respect to, or the termination, cancellation or rescission of any such eviction actions or proceedings, and the pursuit of title insurance, hazard insurance and claims in bankruptcy proceedings, including, without limitation, any and all of the following acts:

   a. the substitution of trustee(s) serving under a Deed of Trust, in accordance with state law and the Deed of Trust;

   b. the preparation and issuance of statements of breach or non-performance;

   c. the preparation and filing of notices of default and/or notices of sale;

   d. the cancellation/rescission of notices of default and/or notices of sale;

   e. the taking of deed in lieu of foreclosure;

   f. the filing, prosecution and defense of claims, and to appear on behalf of the Trustee, in bankruptcy cases affecting Mortgage Notes, Mortgages or Deeds of Trust;

   g. the preparation and service of notices to quit and all other documents necessary to initiate, prosecute and complete eviction actions or proceedings;

   h. the tendering, filing, prosecution and defense, as applicable, of hazard insurance and title insurance claims, including but not limited to appearing on behalf of the Trustee in quiet title actions; and

2

i.  the preparation and execution of such other documents and performance of such other actions as may be necessary under the terms of the Mortgage, Deed of Trust or state law to expeditiously complete said transactions in paragraphs 8.a. through 8.h. above.

9.  With respect to the sale of property acquired through a foreclosure or deed-in lieu of foreclosure, including, without limitation, the execution of the following documentation:

    a.  listing agreements;

    b.  purchase and sale agreements;

    c.  grant/warranty/quit claim deeds or any other deed causing the transfer of title of the property to a party contracted to purchase same;

    d.  escrow instructions; and

    e.  any and all documents necessary to effect the transfer of property.

10.  The modification or amendment of escrow agreements established for repairs to the mortgaged property or reserves for replacement of personal property.

The undersigned gives said Attorney-in-Fact full power and authority to execute such instruments and to do and perform all and every act and thing necessary and proper to carry into effect the power or powers granted by or under this Limited Power of Attorney as fully as the undersigned might or could do, and hereby does ratify and confirm to all that said Attorney-in-Fact shall be effective as of December 7, 2012.

This appointment is to be construed and interpreted as a limited power of attorney. The enumeration of specific items, rights, acts or powers herein is not intended to, nor does it give rise to, and it is not to be construed as a general power of attorney.

Solely to the extent that the Servicer has the power to delegate its rights or obligations under the Agreement, the Servicer also has the power to delegate the authority given to it by Deutsche Bank National Trust Company, as Trustee, under this Limited Power of Attorney, for purposes of performing its obligations and duties by executing such additional powers of attorney in favor of its attorneys-in-fact as are necessary for such purpose. The Servicer's attorneys-in-fact shall have no greater authority than that held by the Servicer.

Nothing contained herein shall: (i) limit in any manner any indemnification provided to the Trustee under the Agreement, (ii) limit in any manner the rights and protections afforded the Trustee under the Agreement, or (iii) be construed to grant the Servicer the power to initiate or defend any suit, litigation or proceeding in the name of Deutsche Bank National Trust Company except as specifically provided for herein. If the Servicer receives any notice of suit, litigation or proceeding in the name of Deutsche Bank National Trust Company, then the Servicer shall promptly forward a copy of same to the Trustee.

This limited power of attorney is not intended to extend the powers granted to the Servicer under the Agreement or to allow the Servicer to take any action with respect to Mortgages, Deeds of Trust or Mortgage Notes not authorized by the Agreement.

The Servicer hereby agrees to indemnify and hold the Trustee and its directors, officers, employees and agents harmless from and against any and all liabilities, obligations, losses, damages, penalties, actions, judgments, suits, costs, expenses or disbursements of any kind or nature whatsoever incurred by reason or result of or in connection with the exercise by the Servicer, or its attorneys-in-fact, of the powers granted to it hereunder. The foregoing indemnity shall survive the termination of this Limited Power of Attorney and the Agreement or the earlier resignation or removal of the Trustee under the Agreement.

This Limited Power of Attorney is entered into and shall be governed by the laws of the State of New York, without regard to conflicts of law principles of such state.

Third parties without actual notice may rely upon the exercise of the power granted under this Limited Power of Attorney; and may be satisfied that this Limited Power of Attorney shall continue in full force and effect and has not been revoked unless an instrument of revocation has been made in writing by the undersigned.

IN WITNESS WHEREOF, Deutsche Bank National Trust Company, as Trustee for the Agreements listed on Exhibit A has caused its corporate seal to be hereto affixed and these presents to be signed and acknowledged in its name and behalf by a duly elected and authorized signatory this 7th day of December, 2012.

Deutsche Bank National Trust Company,
as Trustee for the Agreements listed on Exhibit A

By: _____
Name: Marlon Hogan
Title: Associate

Prepared by: _____

Name: Alice Tatosian

Witness: Gisselle Picard

Witness: Tim Avakian

4

State of California}
County of Orange}

On **December 7, 2012**, before me, Joisy Lissteh Rodriguez Notary Public, personally appeared Marion Hogan who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that she executed the same in her authorized capacity and that by her signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

Witness my hand and official seal.

JOISY LISSETH RODRIGUEZ
Commission # 1989132
Notary Public - California
Orange County
My Comm. Expires Aug 25, 2016

Notary signature

_____
Notary Public, State of California

5

# Exhibit A

Morgan Stanley ABS Capital I Inc. Trust 2005-HE7, Mortgage Pass-Through Certificates, Series 2005-HE7

Morgan Stanley ABS Capital I Inc. Trust 2005-HE1, Mortgage Pass-Through Certificates, Series 2005-HE1

Morgan Stanley ABS Capital I Inc. Trust 2005-HE2, Mortgage Pass-Through Certificates, Series 2005-HE2

Morgan Stanley ABS Capital I Inc. Trust 2005-HE6, Mortgage Pass-Through Certificates, Series 2005-HE6

Morgan Stanley ABS Capital I Inc. Trust 2004-HE2, Mortgage Pass-Through Certificates, Series 2004-HE2

Morgan Stanley ABS Capital I Inc. Trust 2004-HE3, Mortgage Pass-Through Certificates, Series 2004-HE3

Morgan Stanley ABS Capital I Inc. Trust 2004-HE4, Mortgage Pass-Through Certificates, Series 2004-HE4

Morgan Stanley ABS Capital I Inc. Trust 2003-NC9, Mortgage Pass-Through Certificates, Series 2003-NC9

Morgan Stanley ABS Capital I Inc. Trust 2003-NC7, Mortgage Pass-Through Certificates, Series 2003-NC7

Morgan Stanley ABS Capital I Inc. Trust 2003-NC5, Mortgage Pass-Through Certificates, Series 2003-NC5

Morgan Stanley ABS Capital I Inc. Trust 2004-NC1, Mortgage Pass-Through Certificates, Series 2004-NC1

Morgan Stanley ABS Capital I Inc. Trust 2004-NC4, Mortgage Pass-Through Certificates, Series 2004-NC4

Morgan Stanley ABS Capital I Inc. Trust 2006-NC1, Mortgage Pass-Through Certificates, Series 2006-NC1

Morgan Stanley ABS Capital I Inc. Trust 2004-NC6, Mortgage Pass-Through Certificates, Series 2004-NC6

Morgan Stanley ABS Capital I Inc. Trust 2003-NC6, Mortgage Pass-Through Certificates, Series 2003-NC6

# EXHIBIT B

# Delaware

Page 1

## The First State

I, JEFFREY W. BULLOCK, SECRETARY OF STATE OF THE STATE OF DELAWARE, DO HEREBY CERTIFY THE ATTACHED IS A TRUE AND CORRECT COPY OF THE CERTIFICATE OF MERGER, WHICH MERGES:

"OCWEN LOAN SERVICING, LLC", A DELAWARE LIMITED LIABILITY COMPANY,

WITH AND INTO "PHH MORTGAGE CORPORATION" UNDER THE NAME OF "PHH MORTGAGE CORPORATION", A CORPORATION ORGANIZED AND EXISTING UNDER THE LAWS OF THE STATE OF NEW JERSEY, AS RECEIVED AND FILED IN THIS OFFICE ON THE THIRTIETH DAY OF MAY, A.D. 2019, AT 10:48 O`CLOCK A.M.

AND I DO HEREBY FURTHER CERTIFY THAT THE EFFECTIVE DATE OF THE AFORESAID CERTIFICATE OF MERGER IS THE FIRST DAY OF JUNE, A.D. 2019 AT 12:01 O'CLOCK A.M.



Jeffrey W. Bullock, Secretary of State

7443221  8100M
SR# 20194871271

Authentication: 202924145
Date: 05-30-19

You may verify this certificate online at corp.delaware.gov/authver.shtml

STATE OF DELAWARE
CERTIFICATE OF MERGER OF A DOMESTIC LIMITED LIABILITY COMPANY
INTO A FOREIGN CORPORATION

Pursuant to Title 6, Section 18-209 of the Delaware Limited Liability Company Act.

FIRST: The name and state of incorporation of the surviving corporation is PHH Mortgage Corporation, a corporation organized under the laws of the State of New Jersey (the *"Foreign Corporation"*).

SECOND: The name of the limited liability company being merged into the Foreign Corporation is Ocwen Loan Servicing, LLC, a Delaware limited liability company.

THIRD: The Agreement and Plan of Merger, dated as of May 2, 2019 (the *"Agreement and Plan of Merger"*), has been approved and executed by each of the business entities which is to merge.

FOURTH: The name of the surviving foreign corporation is PHH Mortgage Corporation (the *"Surviving Corporation"*).

FIFTH: The executed Agreement and Plan of Merger is on file at the place of business of the Surviving Corporation, the address of which is as follows: 1 Mortgage Way, Mt. Laurel, New Jersey 08054.

SIXTH: A copy of the Agreement and Plan of Merger will be furnished by the Surviving Corporation, on request and without cost, to any member of any domestic limited liability company or any person holding an interest in any other business entity which is to merge or consolidate.

SEVENTH: The Surviving Corporation agrees that it may be served with process in the State of Delaware in any action, suit or proceeding for the enforcement of any obligation of any domestic limited liability company which is to merge or consolidate, irrevocably appointing the Secretary of State as its agent to accept service of process in any such action, suit or proceeding, and the address to which a copy of such process shall be mailed to by the Secretary of State is: 1 Mortgage Way, Mt. Laurel, New Jersey 08054.

EIGHTH: The effective time of the merger herein provided for in the State of Delaware shall be 12:01 a.m. Eastern Time on June 1, 2019.

*[Signature Page Follows]*

State of Delaware
Secretary of State
Division of Corporations
Delivered 10:48 AM 05/30/2019
FILED 10:48 AM 05/30/2019
SR 20194871271 - File Number 3520964

**IN WITNESS WHEREOF,** said Foreign Corporation has caused this Certificate of Merger to be signed by an authorized person, this 2nd day of May, 2019.

PHH MORTGAGE CORPORATION, a New Jersey corporation

By: *Leah E. Hutton*

Name: Leah E. Hutton

Title:   Assistant Secretary

*[ Signature Page to Certificate of Merger -- Delaware ]*