Jerry Losee & JoCarol Losee, Pro se
9253 Frandsen Rd
Lava Hot Springs, Idaho, 83246
Ph: (208)251-6968
Email: jj68mobile@gmail.com

U.S. COURTS

SEP -6 2019

Rcvd_____ Filed_____ Time 10:16 am
STEPHEN W. KENYON
CLERK, DISTRICT OF IDAHO

UNITED STATES BANKRUPTCY COURT

DISTRICT OF IDAHO

| | |
|---|---|
| JERRY LOSEE and JOCAROL LOSEE, Pro,Se | Case No. 19-40540-jmm |
| Plaintiffs, | RESPONSE TO MOTION TO RECONSIDER |
| Vs. | |
| NEW CENTURY MORTGAGE CORPORATION, DEUTSCHE BANK NATIONAL TRUST COMPANY, et all, | |
| Defendants, | |

COMES NOT Jerry Losee and JoCarol Losee, hereby respectfully submits Response to Motion to Reconsider on the Order on Motion for Relief from the Automatic Stay.

### I. FACTUAL AND PROCEDURAL BACKGROUND

This Court granted Deutsche Bank National Trust Company, Motion for Relief from the Automatic Stay. The Defendants are stating that we have done nothing but tried to stall on them foreclosing on our property, which is not the case this has just been an ongoing ordeal in the legal system. The Defendants have been trying to wrongfully foreclose on the property to the extent of using fraud to make it look like that they have the original

RESPONSE TO MOTION TO RECONSIDER -1

note. Exhibit A. In Exhibit B is a letter of our hardship that we have had to endure with the ongoing process of the legal battle and the additional claims that have been filed against the opposing council.

## II.  CONCLUSION

For the reasons stated above, Plaintiffs respectfully request that this Court: Grant the debtors Motion to reconsider

Dated: Sept 4, 2019

_____
Jerry Losee

_____
JoCarol Losee

RESPONSE TO MOTION TO RECONSIDER - 2

# EXHIBIT A



**Kathy S. Carlson**
Western Forensic Document Examiner
P. O. Box 782    Montrose, CO 81402
Office Phone: 970-240-5950    Cell: 970-275-6846
Utah Phone: 801-230-0831
www.coloradohandwritingexpert.com
www.utahhandwritingexpert.com
email: kscarlson1954@gmail.com

## Questioned Document Examiner "Letter of Opinion"

Subject: Adjustable Rate Note, Page 4
Date: August 27, 2011

Today I have examined four (4) documents; "ADJUSTABLE RATE NOTE", dated February 6, 2003, particularly page 4 which will be identified herein as "Q1".

**Comment:** The first 23 lines of "Q1", identified herein as the body of "Q1", are crisper in appearance. The words "(Seal) –Borrower" on the two signature lines of Jerry Losee and JoCarol Losee show much more pixels than the three (3) lines directly below their signatures. There is yellow blotching around the blue ink of the signatures and the blue print at the bottom of "Q1". The number "03-NC5" do not have the same yellow blotching around the numbers and letters.

**Basis of Opinion:** When comparing "the body" of the "Q1" document to the signature line of Jerry Losee and JoCarol Losee, I have determined that there are significant differences in line quality. There are also significant differences in the line quality when comparing the signature lines to the three (3) lines directly below the signatures. Furthermore there are significant differences in line quality when comparing the last numbers "03-NC5" at the bottom of "Q1" document. Please see attached Exhibit 1 for further explanation.

**Opinion:** Based upon thorough analysis of these items and from an application of accepted forensic document tools, principle, and technique, it is my professional expert opinion there are indicators to suggest "Q1" document may not be the original document. Furthermore it is my professional expert opinion there is strong probability the "Q1" document has been altered by machine manipulation. Until I have been provided the "actual "Q1" document", I cannot give a more definitive opinion.

I am willing to testify to these facts in a court of law and will prove to the court my opinion is correct.

Respectfully submitted,

*Kathy S Carlson*
Kathy S. Carlson
QDE

State of Colorado
County of Montrose

The forgoing instrument was acknowledged before me this _27th_ day of _August_, 2011
Kathy S. Carlson did appear before me.

Notary _____

Expiration Date _____

2 YEAR RATE LOCK

# ADJUSTABLE RATE NOTE

(LIBOR Six-Month Index (As Published In *The Wall Street Journal*) - Rate Caps)

THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.

February 6, 2003            LAVA HOT SPRINGS            IDAHO
     [Date]                        [City]                 [State]

9253 FRANDSEN ROAD  , LAVA HOT SPRINGS, IDAHO 83246
                        [Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 96,000.00          (this amount is called "Principal"), plus interest, to the order of Lender. Lender is
NEW CENTURY MORTGAGE CORPORATION

I will make all payments under this Note in the form of cash, check or money order.

I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid Principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of    8.7500    %. The interest rate I will pay may change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

## 3. PAYMENTS

(A) Time and Place of Payments

I will pay Principal and interest by making a payment every month.

I will make my monthly payments on the first day of each month beginning on    April 1, 2003
I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on   March 1, 2033           , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at   18400 VON KARMAN, SUITE 1000
IRVINE, CA 92612
or at a different place if required by the Note Holder.

(B) Amount of My Initial Monthly Payments

Each of my initial monthly payments will be in the amount of U.S. $    755.24          . This amount may change.

(C) Monthly Payment Changes

Changes in my monthly payment will reflect changes in the unpaid Principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

MULTISTATE ADJUSTABLE RATE NOTE - LIBOR SIX-MONTH INDEX (AS PUBLISHED IN *THE WALL STREET JOURNAL*)
Single Family - Fannie Mae UNIFORM INSTRUMENT

-838N (0005)          Form 3520 1/01
VMP MORTGAGE FORMS - (800)521-7291
Page 1 of 4          Initials:

0000805047

## 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES

**(A) Change Dates**

The interest rate I will pay may change on the first day of   March        2005   , and on that day every 6th   month thereafter. Each date on which my interest rate could change is called a "Change Date."

**(B) The Index**

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding   Six and Thirty-Five Hundredths   percentage points (   6.3500   %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid Principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than   10.2500   % or less than   8.7500   %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than   One and One-Half   percentage point(s) (   1.500   %) from the rate of interest I have been paying for the preceding  6   months. My interest rate will never be greater than   15.7500   %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

## 5. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.

I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of this Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

## 6. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

0000605047

Form 3520 1/01
Initials: _____

### 7. BORROWER'S FAILURE TO PAY AS REQUIRED

**(A) Late Charges for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.00 % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

### 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

### 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

### 10. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

### 11. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions read as follows:

0000805047

Form 3520 1/01
Initials:

-838N (0006)   Page 3 of 4

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)      _____ (Seal)
JERRY  LOSEE              -Borrower      JOCAROL  LOSEE              -Borrower

_____ (Seal)      _____ (Seal)
                          -Borrower                                 -Borrower

_____ (Seal)      _____ (Seal)
                          -Borrower                                 -Borrower

_____ (Seal)      _____ (Seal)
                          -Borrower                                 -Borrower

Q1

Pay to the order of, without recourse                                    [Sign Original Only]
Deutsche Bank National Trust Company, as trustee
under Pooling and Servicing Agreement dated
New Century Mortgage Corporation                 as of May 1, 2005 Morgan Stanley ABS
By: _____              Capital I Inc. Trust 2005-NC5
Name: Magda Villanueva
Title: A.V.P / Shipping Manager

0000805047



Top portion of Q1 is crisper, better resolution. Copied less than signature line

Q1

Signature line poor resolution, pixilation shows it has been copied numerous times.

Line directly below signature line has better resolution. Copied less than line above

Yellow blotching is from copier color yellow not properly aligned. Therefore has been copied. Pixilation is the result of numerous copies. Signature lines have been copied.

Bottom handprint has also been copied. Pixilation shows copied numerous times.

03-NC5 has been added at a later time.

Kathy Carlson
Forensic Document Examiner

**Exhibit 1**



Body

loses q1 body clear.jpg Date: 2011-08-26

Page: 1/1



Signature Line

Ioee q1 top left borrower small.jpg Date: 2011-08-26



Line Directly below signature line



losee q1 yellow color 2.jpg Date: 2011-08-26

# EXHIBIT B

May 9, 2017

To whom it may concern,

The following is the history of our home, in 2003 we purchased our home, it was a high interest loan, but we were told to refinance after 1 year to lower our interest. Around the time of purchasing our home, we went into business with a new product that we invented and took on a couple of partners to fund the project. One of these partners was also the president of a local bank. This now former partner at the time told us that he needed us to use our home as collateral on paper incase he was audited, but he said he would not record it. So we did sign upon his request with trust in him, but we later found out that he recorded it without our knowledge. When the relationship went sour with the partners, the home was put into a situation that we could not refinance after the one-year because of the prior partner not releasing our home. Knowing that our business was going into litigation against our former partners was putting us in a situation of making it hard to pay high interest payments on the home; we needed to try doing a modification. When we made contact with the loan servicing company of our home they said we had to contact Deutsche Bank to do any modifications. We then contacted Robert Kellerman the VP of Deutsche Bank. Robert told us that they had no record of our loan with them. This went back and forth with us contacting the loan servicing company and Deutsche Bank with no luck on who had our original wet note. We were now falling far behind with our loan with no way of doing a modification because no one knew who had our original we note. We had to hire an attorney to help us in locating this note. We then filed against everyone associated with the home. To our surprise Deutsche Bank all of a sudden makes reference that they have the original wet note, with this being said after they denied over and over that they did not have it, which cost us thousands of dollars in late fees and attorney cost and putting our home into foreclosure and to be auctioned. We then told Deutsche to provide us with the proof that they actually have the original wet note because of them telling us for so long that they did not have it. We then received an email with the wet note attached. As I examined the email of the attached wet note, I noticed that it did not look real. I then forwarded the email to a forensic to examine it and she said it was a copy of a fake and that there was proof that it had a cut and paste of our signatures in the document and therefore was not the original note that they said they had. I also want to mention that Deutsche Bank representative told the Judge in court that it was the original, but when we told them that it was a fake, Deutsche Bank would not let us or in no way let a forensic examine it. We then tried to submit to the courts that this was fraud done by Deutsche Bank, the judge ignored us and would not let us submit the fraudulent paperwork and dismissed our efforts. Again the litigation at the time with the court was to prove who had the wet note, not that there was proof of fraud which we would like to bring to the attention of Deutsche Bank cutting and pasting our names into a document and calling it an original wet note. Because Deutsche Banks fraudulent actions we have had to file for bankruptcy three times to save our home from auction. Because of these bankruptcies it has destroyed our credit and lively hood including business opportunities. Please note that we have all documented proof of the above fraudulent matters, and we hope that we can be properly compensated for this long disastrous strung out matter.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 5 day of September, 2019, I served a true and correct copy of the foregoing **Motion to extend time for response for Summary Judgment** by causing a copy to be delivered by U.S. Mail, postage prepaid to:

HAWLEYT TROXELL ENNIS & HAWLEY LLP
P.O. Box 1617
Boise, ID 83701

JoCarol Losee